IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 2:29 pm, Aug 07, 2019*

| | |
|---|---|
| WILLIAM A. ACREE, | |
| Plaintiff, | CIVIL ACTION NO.: 6:17-cv-106 |
| v. | |
| ARLISSA HUNT; JAVAKA JOHNSON; OFFICER BILLUPS; MS. JACKSON; and PRISONER MAPP, | |
| Defendants. | |

## ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brought this action under 42 U.S.C. § 1983 while incarcerated Georgia State Prison in Reidsville, Georgia, to challenge certain conditions of his confinement. Doc. 1 at 1. Defendants Jackson, Johnson, Billups, and Hunt filed a Motion to Dismiss. Doc. 28. After careful consideration, I **RECOMMEND** the Court **GRANT** Defendants' Motion, doc. 28. I further **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Complaint, as supplemented, docs. 1, 19, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

### BACKGROUND

On May 20, 2016, Defendant Mapp—then an inmate at Georgia State Prison and Plaintiff's cellmate—attacked Plaintiff, breaking Plaintiff's jaw and damaging his right eye. Doc. 1 at 5. Plaintiff contends Defendant Mapp attacked him after Plaintiff "caused the room to get sprayed with mace and [Plaintiff and] Mapp had to go to medical and get decontaminated."

Doc. 19 at 2–3.  Plaintiff alleges that he previously informed Defendants Billups, Hunt, Johnson, and Jackson (all prison employees) that Defendant Mapp threatened to harm him, but the prison-employee Defendants failed to protect Plaintiff.  Doc. 1 at 5; Doc. 19.  Plaintiff contends the conditions at Georgia State Prison are "generally dangerous," and the persistent "overcrowding and understaffing" caused a significant threat to his health, safety, and welfare.  Doc. 19 at 1–3.  Finally, Plaintiff asserts Defendant Billups "gave [Defendant] Mapp the green light to get" him and that Inmate Mapp "was giv[en] the okay by a person acting under color of state law (Billups) to attack [Plaintiff]."  Id. at 3–4.

Plaintiff filed this action with the Court on November 6, 2018.  Doc. 1.  The Court initially found Plaintiff failed to state a claim and recommended his action be dismissed.  Doc. 15.  On May 4, 2018, Plaintiff filed an Amended Complaint.[1]  Doc. 19.  The Court determined that Plaintiff's Amended Complaint cured some of the deficiencies in his original pleading.  Doc. 21.  The Court also found Plaintiff's allegation that Defendant Billups, a prison official, approved Defendant-Inmate Mapp's use of allegedly excessive force on Plaintiff created a non-frivolous allegation that Defendant-Inmate Mapp acted under color of state law and, consequentially, allowed Plaintiff's § 1983 claim against Mapp to proceed.  Id. at 7–8.

After the Court's requisite frivolity review, the following claims remain pending: (1) an Eighth Amendment failure to intervene claim against Georgia Department of Corrections ("GDC") employees Defendants Hunt, Johnson, Billups, and Jackson; and (2) an Eighth Amendment excessive force claim against Defendant-Inmate Mapp.  Id. at 4–8.

---

[1]  Although the Court refers to this pleading as Plaintiff's Amended Complaint, the Court construed Plaintiff's amendment as a supplement to his original Complaint.  Doc. 21 at 3 n.1.

2

On February 4, 2019, Defendant Mapp returned an executed waiver of service to the Court. Doc. 28. However, Defendant Mapp failed to submit a timely responsive pleading to Plaintiff's Complaint or, indeed, submit any response at all.

On November 20, 2018, Defendants Hunt, Johnson, Jackson, and Billups filed a Motion to Dismiss, arguing Plaintiff failed to exhaust his administrative remedies. Doc. 28. Plaintiff filed Responses in opposition, and Defendants Hunt, Johnson, Jackson, and Billups filed a Reply. Docs. 31, 32, 33, 37.

## DISCUSSION

### I. Proper Exhaustion Under § 1997(a)

#### A. PLRA's Exhaustion Requirement

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)). Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding that the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question

3

that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones, 549 U.S. at 216; Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. "In response to a prisoner lawsuit," however, "defendants may file a motion to dismiss and raise as a defense the prisoner's failure to exhaust administrative remedies." Pearson, 665 F. App'x at 867. Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." White v. Berger, 709 F. App'x 532, 541 n.4 (11th Cir. 2017) (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)); Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017); Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record." (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008))).

Proper exhaustion requires strict compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 91 (2006). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure *before* pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (emphasis retained) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure

4

*before* initiating this suit." (emphasis retained) (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000))). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974. Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting that an inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))); see also Sewell v. Ramsey, No. 4:06-cv-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The policies of the particular institution determine what is necessary to fully exhaust all administrative remedies. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 203 (11th Cir. 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures established by the prison."). However, "[p]roper exhaustion generally does not require that a prisoner resort to optional administrative procedures to address prison conditions." Trevari v.

5

Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752 (11th Cir. 2018) (citing Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015)).

### B. The GDC's Administrative Remedies

Georgia State Prison utilizes the GDC's procedures for prisoner grievances. Doc. 28-2 at 2–3; Doc. 28-3. The GDC's "prison grievance procedures are set out in a standard operating procedure." Doc. 28-3; Whatley I, 802 F.3d at 1208. Standard Operating Procedure ("SOP") IIB05-0001 contains the GDC's policy for general grievances, including grievances for excessive force and retaliation. Doc. 28-3; see Whatley v. Smith (Whatley II), 898 F.3d 1072, 1074 (11th Cir. 2018) ("To exhaust administrative remedies under the Georgia Department of Corrections Standard Operating Procedures ("SOP"), inmates must follow the . . . prison grievance process outlined in SOP IIB05-0001."). Defendants attached the version of SOP IIB05-0001 applicable to Plaintiff's Complaint to their Motion to Dismiss. Doc. 28-3.

The grievance procedure outlined in SOP IIB05-0001 is a two-step process. Doc. 28-3 at 9; Malcolm v. Doe, No. 6:18-cv-24, 2018 WL 2108108, at *4 (S.D. Ga. Mar. 19, 2018); Shaw v. Toole, No. 6:14-CV-48, 2015 WL 4529817, at *5 (S.D. Ga. July 27, 2015). To properly exhaust, incarcerated individuals must properly fulfill the requirements of both steps. Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005). First, inmates must file a grievance within 10 days of becoming aware of the facts from which the grievance arises. Doc. 28-3 at 10; Whatley II, 898 F.3d at 1075; Toole, 2015 WL 4529817, at *5. However, the time limit may be waived for good cause. Doc. 28-3 at 10; Toole, 2015 WL 4529817, at *5. Once a grievance is accepted for processing, the warden typically has up to 40 days to review the grievance and determine whether to grant or deny it. Doc. 28-3 at 12; Toole, 2015 WL 4529817, at *5.

If a grievance is denied or goes unanswered, the inmate is required to appeal the denial or non-response after the warden's time to answer expires. Doc. 28-3 at 14; Toole, 2015 WL 4529817, at *5 ("An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired."). The inmate has seven calendar days from the date he receives the warden's response to his grievance to file a Central Office Appeal. Doc. 28-3 at 14; Toole, 2015 WL 4529817, at *5. To appeal, the incarcerated individual "must fill out and sign the Central Office Appeal Form . . . and give it to his/her Counselor." Doc. 28-3 at 14; McIlwain v. Burnside, No. 5:17-cv-363, 2019 WL 984289, at *3 (M.D. Ga. Jan. 30, 2019) ("In order to successfully file an appeal, an inmate must fill out a Central Office Appeal Form, sign it, and give it to the appropriate counselor."). The grievance counselor then provides the inmate a receipt, which is found at the bottom part of the Appeal Form. Doc. 28-3 at 14. The Commissioner then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender. Doc. 28-3 at 15; Toole, 2015 WL 4529817, at *5. The grievance process is not complete until the inmate receives the Central Office's response to his appeal. Wright v. Fish, No. 3:19-cv-003, 2019 WL 2721222, at *6 (S.D. Ga. May 14, 2019).

### C. Standard of Review for Exhaustion

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1080–82. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true." Id.; see also Bracero, 748 F. App'x at 202. The first prong of the Turner test ensures there is a

7

genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn, 706 F. App'x at 563–64 (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209).

### D. Applying the Turner Test

Defendants Hunt, Johnson, Billups, and Jackson argue the Court must dismiss Plaintiff's Complaint because Plaintiff failed to exhaust all administrative remedies before filing as required under the PLRA.[2] Docs. 28; 28-1. Plaintiff asserts in his Complaint that he grieved the events at issues and that he did not receive a response from the warden, but Defendants argue Plaintiff does not allege he "appealed the warden's alleged failure to respond." Id. at 5. Thus, Defendants contend, "Plaintiff's Complaint is due to be dismissed under Turner's first tier

---

[2]  Defendants Hunt, Johnson, Billups, and Jackson are all GDC employees. Doc. 1 at 4. Defendant Mapp, an inmate, did not join in the Motion to Dismiss nor did he file any other responsive pleading. See Doc. 28. For convenience, where the term "Defendants" is used in this Report concerning the motion to dismiss, that term refers only to Hunt, Johnson, Billups, and Jackson.

analysis." Id. Second, Defendants argue the undisputed evidence shows that Plaintiff did not file a timely grievance regarding the facts of the above-styled action. Id. at 5–6. In support of their claims, Defendants attach an affidavit from Aaron Pineiro, the deputy warden of care and treatment at Georgia State Prison, and Plaintiff's grievance history during his time under the custody of GDC. Doc. 28-2; Doc. 28-3.

In response, Plaintiff argues he did appeal the warden's failure to respond to his initial grievance but received a response saying his appeal was not on the proper form. Doc. 31 at 2; Doc. 37 at 2. He alleges both that he has a witness and that his medical records and transports contain "credible evidence" of his efforts at exhaustion. Doc. 31 at 2; Doc. 37 at 2. Plaintiff also argues he discussed the issues related to the claims in this lawsuit with various prison officials and cured all exhaustion issues on January 28, 2019 (notably, long after Plaintiff initiated this action). Doc. 1 at 5; Doc. 31; Doc. 37 at 1–2. He describes conversations with multiple prison officials, including Defendant Hunt (in June 2016) and advocate Tina Kelly (on May 21, 2016). Doc. 1 at 3–4; Doc. 37 at 1–2. He also wrote letters to the warden and unit manager and spoke with medical staff at Georgia State Prison. Doc. 1 at 3–4; Doc. 37 at 1–2.

The only way for Plaintiff to exhaust his administrative remedies is to file and appeal a grievance in compliance with the procedure set forth in SOP IIB05-0001. See Bracero, 748 F. App'x at 203 (finding an inmate failed to exhaust when "the prison returned [his] grievances without further action for non-compliance with the rule requiring an inmate to write his complaint within the boundaries of the space provided on the form"). Additionally, Plaintiff cannot cure the lack of exhaustion while his lawsuit is pending. Terry, 491 F. App'x at 82–83 (finding the plaintiff "failed to exhaust his administrative remedies" when he "failed either to receive the . . . denial of his appeal or to wait the requisite [time period] before filing his section

9

1983 complaint"); Harris, 216 F.3d at 981; Hatch v. Burke Cty. Jail, No. 1:06-cv-080, 2006 WL 2660162, at *2 n.3 (S.D. Ga. Sept. 14, 2006) (recommending dismissal without prejudice when plaintiff failed to exhaust before filing suit because "if plaintiff can [later] exhaust his administrative remedies . . . he may proceed in a new civil action"); Womack v. Donald, No. 3:06-cv-59, 2006 WL 2598211, at *3 (S.D. Ga. Sept. 8, 2006) ("[T]he PLRA does not allow Plaintiff to exhaust administrative remedies while his case is pending.").

Defendants argue Plaintiff's Complaint should be dismissed under step one of the Turner test because "Plaintiff does not claim to have appealed the warden's alleged failure to respond as is required in the SOP." Doc. 28-1 at 5. In his Complaint, Plaintiff writes that he "filed grievance [sic] with counselor and wrote several administration and staff," but he "never got any response." Doc. 1 at 3. In addition, he states that he wrote "statements and letters, but never got any responses back . . . ." Id. at 3–4. While Plaintiff's allegation that he submitted grievances and did not receive a response could seemingly imply that Plaintiff did not appeal his grievance after the warden's time for response expired, Plaintiff does not claim that he did not receive a response from the warden. And the statements Plaintiff makes in his Complaint are not inconsistent with exhaustion. In fact, in his response to Defendants' Motion, Plaintiff alleges he "did so appeal the warden's failure to respond to Central Office, but they return[ed] papers saying they were not on [the] proper form[s,]" and his appeal was not filed on record. Doc. 31 at 1–2. In other words, Plaintiff asserts that he attempted to appeal the warden's non-response, but his efforts were rejected.

Defendants additionally argue that Plaintiff's Complaint should be dismissed under step two of the Turner test because Plaintiff "failed to timely file any grievance which references the facts of this suit." Doc. 28-1 at 6. In support of this argument, Defendants attach an affidavit

10

from Aaron Pineiro who, among other things, is responsible for "maintaining information and records regarding inmate grievances." Doc. 28-2 at 2. The GDC retains a "central database" of inmate grievances. Id. at 4. Every processed grievance is "logged into a central database and assigned a control number" around the time each grievance is received. Id. The central database also allows GDC officials to print an inmate's grievance history which displays information about each grievance filed by that inmate during that inmate's incarceration in any GDC institution. Id. Defendants attached a printout of Plaintiff's grievance history, which Pineiro attests is true and correct. Id.; Doc. 28-4. The attached grievance history shows the date the inmate initially filed the grievance, the institution, and the grievance number and category, as well as the status of the grievance. Doc. 28-4. The status category contains several potential responses, including rejected (presumably indicating the grievance counselor did not accept the grievance for processing), denied (showing the warden denied the grievance), and appeal denied (demonstrating the Central Office rejected the grievance). Id.

Defendants argue the Court should dismiss Plaintiff's Complaint under the second step of the Turner test because the records demonstrate Plaintiff failed to file a timely grievance. Doc. 28-1 at 5–6. Defendants point to Plaintiff's grievance history to show Plaintiff did not file a grievance within 10 days of May 20, 2016—the day Defendant Mapp assaulted Plaintiff. Doc. 28-1 at 2; Doc. 28-2 at 4; Doc. 28-4 at 5–6. Defendants are correct. Plaintiff did not file a grievance within 10 days of his attack. Doc. 28-4 at 5–6. Rather, Plaintiff's grievance history shows that he filed a grievance at Georgia State Prison on March 25, 2016 (number 216187) and did not file another grievance until June 10, 2016. Id. He filed the June 10, 2016 grievance (number 221382) while at Augusta State Medical Prison. Id. The lack of a timely grievance alone, however, is not enough to necessitate the Court move on to Turner step two. Plaintiff

11

alleges he filed a grievance, but he does not claim he timely filed one—rather, he provides no any information as to when he grieved the incident. Docs. 1, 19. Thus, no factual conflict exists between Defendants' claim and Plaintiff's allegation, and Defendants' argument is more properly analyzed under the first step in the Turner analysis.

Additionally, prison officials may waive the timeliness requirement for good cause. Doc. 28-2 at 4; Doc. 28-3 at 10; Whatley II, 898 F.3d at 1082 ("The burden therefore is on the defendant to show that the plaintiff has not exhausted properly his administrative remedies."). Under SOP IIB05-0001, Plaintiff could exhaust by filing a subsequent grievance and showing good cause for the delay. Doc. 28-4 at 1–6; Mason v. Bridger, 261 F. App'x 225, 229 (11th Cir. 2008). Indeed, the injuries Plaintiff alleges—including a broken jaw—may very well constitute good cause.

Finally, Defendants argue Plaintiff failed to "timely file any grievance which references the facts of this suit." Doc. 28-1 at 6. Defendants later clarify they are arguing not just that Plaintiff did not appeal or timely file a grievance but that he "failed entirely to grieve the events at issue in this suit." Doc. 32 at 2–3. In support, Defendants point to Pineiro's affidavit. Id. There, Pineiro states that his "review of [Plaintiff's] grievances at G[eorgia] S[tate] P[rison] from 2016 did not reveal any grievances related to the altercation with an inmate Mapp or a failure to protect from such." Doc. 28-2 at 5. Plaintiff alleges he "entirely grieved the events at issue in this suit" and appealed the denial of his grievance to "the highest level . . . ." Doc. 37 at 1–2. However, he states he turned in a handwritten appeal and did not utilize the Central Office Appeal Form, and prison officials rejected his appeal due to the improper form. Id.; Doc. 31.

Under the facts pled by Plaintiff, the prison rejected Plaintiff's appeal based on a procedural deficiency before reaching the merits of Plaintiff's claim. Whatley II, 898 F.3d at

12

1086 ("[T]o preserve its procedural objection, the prison must affirmatively invoke the procedural rule at the administrative level."); Whatley I, 802 F.3d at 1213–14 (finding "that a prisoner has exhausted his administrative remedies when prison officials decide a procedurally flawed grievance on the merits").  Plaintiff does not allege that prison officials did not provide him a copy of the Central Office Appeal Form or that the Form was otherwise unavailable.  He provides no explanation as to why he could not appeal using the Central Office Appeal Form, as SOP IIB05-0001 requires.  Moreover, Plaintiff does not explain why he did not attempt to resubmit his appeal on the proper form once prison officials returned the handwritten appeal.  Rather, Plaintiff argues he exhausted his administrative remedies by submitting a handwritten appeal on an improper form.  However, prison officials rejected his appeal based on this procedural deficiency, without reaching the merits.

The requirement that inmates submit appeals on the Central Office Appeal Form is more than just a procedural detour.  Indeed, the GDC has good reason to require inmates use this form—the receipt for the received appeal is attached to the bottom half of the Form.  To avoid disputes like this one, grievance counselors are required to provide the receipt to the inmate upon receiving the Central Office Appeal Form.  Doc. 28-3 at 14.  The receipt documents the submission of the appeal.  Had Plaintiff alleged the Appeal Form was unavailable to him, his attempt to submit a handwritten appeal would make sense.  Short of such an allegation, however, the Court is left with Plaintiff's own claim that he did not, in fact, follow proper procedures when submitting his appeal and that the prison denied his appeal on those procedural grounds.  Under these facts, Plaintiff failed to exhaust his administrative remedies.  Woodford, 548 U.S. at 95 (noting that exhaustion requires prisoners comply with all deadlines and "critical procedural rules" and that prisoners have "little incentive to comply with the system's procedural rules

13

unless noncompliance carries a sanction"). Thus, under step one of the Turner test, Plaintiff has failed to exhaust his administrative remedies.

Even if Plaintiff could survive step one of the Turner test, it is clear that Plaintiff failed to exhaust under step two. The evidence of record undermines Plaintiff's assertion that he submitted a grievance on the issues relevant to this action and that he appealed that grievance on a handwritten form. First, Defendants provide a sworn affidavit which attests that Plaintiff failed to submit a grievance related to Defendants' failure to protect or regarding Defendant Mapp, generally. Doc. 28-3 at 5. While Plaintiff states that he provided documents to the Court demonstrating his exhaustion of administrative remedies, doc. 37 at 1, the record contains no such filings. Plaintiff has not provided any such documentation to the Court, not at the time he filed his claim or otherwise.[3] This fact cuts against Plaintiff's credibility. Moreover, Plaintiff did not offer—either in his responsive pleadings or in his Complaints—any information regarding the date, time, or submission of the original grievance or appeal. The lack of contextual details, as well as the lack of any outside evidence, weighs against a finding that Plaintiff submitted a grievance related to the claims asserted in this lawsuit. Finally, though not determinative, Plaintiff's Grievance History renders his allegation even more implausible. Plaintiff filed and properly appealed numerous grievances both before and after May 20, 2016, when the incident giving rise to this suit occurred. See Shaw v. Upton, Case No. 6:16-cv-6, 2017 WL 2313007, at *8 (S.D. Ga. Feb. 13, 2017) (finding a plaintiff's extensive grievance history "belie[d] any contention that prison officials thwarted his attempts to file grievances or otherwise made the grievance process unavailable to him").

---

[3] In support of his motion for a preliminary injunction, Plaintiff provided a copy of a witness statement dated February 15, 2018, doc. 13-1, but the document does not support Plaintiff's claim that he exhausted all administrative remedies regarding the May 20, 2016 assault.

Plaintiff argues that his efforts at exhaustion can be corroborated by both a witness and evidence from his medical records. Plaintiff has not submitted an affidavit from the witness or even identified the witness by name. Although he contends he needs discovery to obtain copies of his medical records, Plaintiff does not describe the facts contained within those medical files or explain how those facts would demonstrate proper exhaustion. Moreover, as discussed above, incarcerated individuals can properly exhaust only through strict compliance with the procedures outlined in SOP IIB05-0001—conversations with prison medical staff, letters to the warden, or discussions with investigators are insufficient. The evidence before the Court demonstrates Defendants' assertions regarding Plaintiff's lack of exhaustion are more credible than Plaintiff's own self-serving, unsworn statements. Thus, Plaintiff failed to exhaust his administrative remedies under step two of the Turner analysis. For these reasons, I **RECOMMEND** the Court grant Defendants' Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint.

## II.     Plaintiff's Failure to Exhaust and Defendant-Inmate Mapp

Though Inmate Mapp did not join in Defendants' Motion to Dismiss—and indeed, did not file any response to Plaintiff's Complaint at all—Plaintiff's failure to exhaust requires the Court also dismiss Plaintiff's claim against Inmate Mapp.

Generally, inmates are not state actors against whom a § 1983 claim can be brought. Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) ("Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes."); Chisum v. Beavers, No. 6:18-cv-116, 2019 WL 2241679, at *4–5 (S.D. Ga. Apr. 30, 2019) ("To successfully raise a § 1983 claim,' Plaintiff is 'required to show that he was deprived of a federal right by a person acting under color of state law." (quoting Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006))); Gibson v. Slocovich, No. 3:18-cv-2163, 2018 WL 8139203, at *1 (N.D. Fla. Dec. 6,

2018); Welch v. Estes, No. 5:14-cv-00250, 2014 WL 7369424, at *3–4 (N.D. Ala. Dec. 29, 2014); Williams v. Patillo, No. 7:10-cv-142, 2011 WL 672334, at *3 (M.D. Ga. Jan. 21, 2011). "A private person is only viewed as acting under color of state law if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly attributed to the State." Mosley v. Medlin, No. 3:13-cv-086, 2014 WL 3110027, at *6 (S.D. Ga. July 7, 2014). "[A]n inmate may act under color of state law for § 1983 purposes if that inmate is carrying out a specific order of a correction officer or if he has been granted certain authority that enables him to harm the plaintiff." Pearl v. Dobbs, 649 F.2d 608, 609 n.1 (8th Cir. 1981). Here, the Court allowed Plaintiff's action to proceed against Mapp only because Plaintiff asserted that Defendant Billups gave Mapp "the green light" to attack Plaintiff. Doc. 21 at 7–8; Doc. 19 at 4–5.

Because Plaintiff entirely failed to file a grievance related to any of the facts asserted in this action, his claim against Defendant-Inmate Mapp must also be dismissed. Section 1997e(a) provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002) (finding § 1997e(a)'s reference to "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Plaintiff was confined at Georgia State Prison when he brought this § 1983 action against all Defendants, including Defendant-Inmate Mapp. Doc. 1. Section 1997e(a) contains no requirement that incarcerated persons need only exhaust § 1983 prison-condition claims brought against prison officials; rather, it encompasses all federal actions contesting prison conditions brought by

16

incarcerated persons. Plaintiff's claim against Inmate Mapp arises from the same set of facts as Plaintiff's claims against Defendants. As discussed above, Plaintiff did not exhaust his administrative remedies as to any of the facts alleged in this action.[4] Doc. 28-1 at 6; Doc. 32 at 2–3. While § 1997e(a) would not prevent Plaintiff from bringing a state court cause of action against Defendant-Inmate Mapp, under the plain language of the statute, Plaintiff cannot maintain an unexhausted § 1983 claim against Mapp.

Here, Plaintiff's § 1983 claim against Defendant-Inmate Mapp is based on an extension of Defendants' status as prison officials and state actors. Under § 1997e(a), however, an entirely unexhausted § 1983 claim cannot survive against any defendant, regardless of the specific factual contortions which transform an otherwise private individual into a state actor. While one unexhausted claim does not mandate dismissal of a different, properly exhausted claim brought in the same action, when a plaintiff-prisoner fails exhaust the facts underlying a claim, § 1997e(a) requires courts dismiss the unexhausted claim against all defendants. See Ross, 136 S. Ct. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."); Bock, 549 U.S. at 220–24 (2007); Bracero, 748 F. App'x at 201 ("[B]ecause '[e]xhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court . . . failure to exhaust administrative remedies requires that the action be dismissed." (quotations omitted)). Put simply, there is no exception to exhaustion, based solely on the fact that a defendant is also an inmate.

Finally, Plaintiff's assertion that a prison official ordered or approved of Defendant-Inmate Mapp's violent attack on Plaintiff implicates serious prison safety concerns and is

---

[4] Indeed, in his affidavit, Pineiro specifically writes that, during his review of Plaintiff's grievance history, he did not find "any grievances related to the altercation with an inmate Mapp . . . ." Doc. 28-2 at 5; see also Doc. 32 at 2.

17

precisely the type of issue which prisons should have the opportunity to investigate and resolve internally before it is litigated in federal court.  Toenninges v. Georgia Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015) (requiring a plaintiff grieve a specific issue not listed as grievable in the prison's policy because of the prison's "important institutional interest in security and the PLRA's goal to give institutions an opportunity to internally resolve issues"); Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (summarizing the policy rationales behind § 1997e(a)'s exhaustion requirement).  Thus, a finding that § 1997e(a) also mandates the Court dismiss Plaintiff's unexhausted claim against Defendant-Inmate Mapp, as well as the other remaining Defendants, is consistent with the overall policy goals underlying the exhaustion requirement.  Accordingly, I **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's Eighth Amendment claim against Defendant-Inmate Mapp.

### III.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal.  See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I also **RECOMMEND** the Court **DISMISS without prejudice** Plaintiff's claim against Defendant Mapp.  I further **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, doc. 28, **DISMISS without prejudice** Plaintiff's Complaint, as amended, docs. 1, 19, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of August, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA